## No. 115.

### O. P. ALFORD *v.* SILVERE TIBLIER.

1. Where parties definitely agree in their contract, to submit all differences which may arise thereunder to arbitration, this stipulation is binding, and either party appealing to the courts, before submitting to or tendering arbitration, will be dismissed.
2. Such a defense, however, is waived where the party sued appears and presents his defenses, without specially pleading this objection.
3. A party tendering compliance of his obligation under a contract, requiring payment of money, need not actually exhibit the money if he is, in fact, in a condition to perform what he offers to do.
4. Where a party is unable to comply with his contract, no default against him is necessary.
5. Where, upon demand for compliance, a party refuses absolutely, or seeks to impose upon his compliance conditions foreign to the contract, no further putting in default is necessary.
6. Although a term is ordinarily presumed to be stipulated for the benefit of the debtor, yet there may be cases when it is for the benefit of debtor and creditor, or even exclusively for the creditor alone. In the latter event, the creditor may waive it, and put his debtor *in mora* before it has elapsed, provided the debtor suffer no injury by the waiver.
7. Where a purchase is made, and the vendor fails to deliver, the measure of damage is the difference between the contract price and that of the market upon the date when, by the terms of the agreement, delivery should have been made.
8. Where a purchaser stipulated for delivery in New Orleans, it matters not what eventual disposition he intended making of the property. The market price at New Orleans must govern, and not that in Kentucky, where the mules in this case might have been sent, had they been delivered.

9. Where the contract is for a specified number or amount, the purchaser cannot be forced to sever his purchase, and accept only a portion thereof.

*Appeal from the Civil District Court. Houston, Judge.*

*B. R. Forman* and *J. O. Nixon, Jr.*, for plaintiff.

*F. D. Seghers* and *Cotton & Levy* for defendant, appellant.

McGLOIN, J.—Plaintiff sues for damages for violation of a contract for sale and delivery of 100 Mexican mules, in two lots, of 50 each. The contract was written. The first lot of mules, amongst other qualities, were to be in height not less than $13\frac{1}{2}$ hands. The others were to be colt mules, sound, and in good flesh and condition, between two years past and three years of age, well shaped, and, according to age, of a better class than the first. The price fixed was $35 for the colt mules, and $45 for the others. The damages are set at $10 a head upon both lots. The contract concludes with a stipulation binding the parties in case of difficulty to submit to arbitration, one arbitrator to be selected by each, and they to select the umpire, if necessary. Tiblier also bound himself " to keep and feed said mules for three days, before their delivery, after their arrival in this city."

Defendant urges that the agreement to arbitrate was valid and binding, and that, without previous tender of arbitration, plaintiff could not appeal to the courts. The attempt of plaintiff to prove such tender has not, in our opinion, been successful. It is, on the other hand, contended that an agreement to submit to arbitration is revocable at any time before award, citing Davis v. Maxwell, 27 Ga. 368; King v. Howard, 27 Mo. 21; Tobey v. Bristol, 3 Story 800; Marsh v. Parker, 20 Vt. 198. To the same effect are McGunn v. Hawlin, 29 Mich. 476; Goodwine v. Miller, 32 Ind. 419; Brown v. Welker & Gost, 1 Coldw. (Tenn.) 197; 40 N. J. Law (11 Vroom), 288; Robertson v. McNeil, 12 Wend. 578. These cases follow the English authorities, as cited in Tobey v. Bristol. They are, however, in conflict with Snodgrass v. Gavit, 28 Penn. St. 221; Leebrick v.

Lyter, 3 Watts & Seargeant (Pa.) 365; McGeehan v. Duffeild, 5 Barr. (Pa.) 497; Ennis v. O'Connor, 3 Harris & John (Md.), 163; Monongahela Nav. Co. v. Fenton, 4 W. & S., 205; Berry v. Carter, 19 Kansas 135. In our courts, in Driggs v. Morgan, 2 La. An. 151, the Court held such a stipulation to be a contract, and in Lallande v. Bouny, 13 La. 462, it speaks of arbitration as an amicable tribunal, and intimates very strongly that the exception in that case, presenting the very question now being discussed, would have been maintained had not the arbitrators named refused to proceed.

The English authorities cited by Judge Story, in Tobey v. Bristol, follow Vynor's case, 8 Co. R. 81, which latter rests upon the proposition that a man may not render irrevocable a warrant or authority, which is in its nature countermandable, as if a party should create another his agent, or should declare his testament to be immutable, by doing which he could not preclude himself from revoking it. This, it seems to us, was taking at the outset for granted the very question which was at issue. The law does not, except when the public necessity or general good demands it, restrict the liberty of contract; and parties may, by agreement, make that immutable which the letter or plain spirit of the law does not declare shall remain revocable. In the execution of a testament there is no mutuality, no determination and fixing of conflicting rights or interests, and, in fact, nothing to place it upon the same footing as a solemn contract executed between capable parties. So, likewise, where a principal may usually revoke an agency, he cannot do so where the agency is coupled with an adverse interest in the agent, or in third persons.

The Supreme Court of the United States, in Newcomb v. Wood, 97 U. S. 583, as does Judge Story, in Tobey v. Bristol, expressly declares that there is in such conventions nothing contrary to public policy.

So, in many of the authorities declaring that such a submission is revocable, where the parties had executed bonds with a penalty to abide the action of arbitrators, it has been deter-

mined that the bond or penalty may be enforced against the party receding. King *v.* Joseph, 5 Taunton 452; Brown *v.* Leavitt, 26 Maine 256; Craftsbury *v.* Hill, 28 Vt. 763. Even without such special bond, it has been held that mutual promises to arbitrate are sufficient considerations, one for the other, and that the party receding without justification is liable for resulting damages. Pond *v.* Harris, 113 Mass. 118.

In fact, all the authorities are uniform, that once an award has been found, the right of revocation is certainly at an end.

From all of this, it clearly appears that such contracts are not in any manner in contravention of the law or of public policy. Why, therefore, should parties be exempted from abiding by such stipulations any more than they would be where their conventions cover any other lawful subject? Where lies the wisdom or logic of fixing a line, upon one side whereof the contract shall prevail, according to its letter, while upon the other it shall not? In fact, by what right may courts of law, or those whose equitable intervention is like ours, not entirely a matter of their own discretion, place beyond the pale of enforcement contracts of this particular kind, although their subject-matter be in no manner illegal?

Judge Story, in Tobey *v.* Bristol, seeks to meet these objecjections, by declaring that while parties who have abided by the agreement, until the award, should be held, that, until such award, they should not be compelled, against their will, to submit their interests to the determination of a tribunal which had not powers and facilities, such as these lodged in the regular courts, for arriving at the truth, and administering full justice. In the first place, the Civil Code of Louisiana, Art. 3115, supplies this deficiency, as do the laws of many other States of the Union. But, if they did not, there is no more reason, the consideration of consent or agreement being eliminated, for compelling a party to abide by, and render effective, what is, or may be, considered as an accomplished injustice resulting from this want of power, than to compel him to submit himself, in the first place, to the risk thereof.

Furthermore, parties should take all these matters into due consideration before contracting; and courts, in default of legislative intervention, and in matters of strictly individual concern, are not at liberty to force their wisdom upon the citizen. When the law thus intervenes for the protection of minors, interdicts, married women, etc., it leaves others to protect and promote their own interests as they deem best.

Such an objection, however, it seems to us, is in the nature of a plea to the jurisdiction of the Court *ratione personæ*, or, at all events, it constitutes one of those matters which may be waived; and we are of opinion that where, as in this case, without any reservation of the plea, the party cited appears and presents his defenses to the court before which he is sued, there is such a waiver.

Defendant next urges that he has not been placed *in mora*. It appears that plaintiff sent a representative to demand of defendant delivery of the mules, and to tender compliance upon the part of plaintiff with the contract. We do not agree with defendant's counsel, that in such a case the party so applying, although fully prepared, and so announcing, to comply with his part, is compelled in all cases to actually exhibit his money. Fuentes *v.* Caballero, 1 La. An. 27; Bowman *v.* Ware, 18 La. 599. Furthermore, it appears that there were not a sufficient number of Mexican mules, besides those in question, accessible to defendant, with which to comply with his contract, and if they did not meet its requirements, it was not in his power to perform. Under such circumstances, default would be a vain ceremony, to the idle performance whereof parties should not be held. Moreau *v.* Chauvin, 8 Rob. 61; Marchesseau *v.* Chaffe, 4 La. An. 241; Garcia *v.* Champonier, 8 La. 522. Still further, the weight of the evidence establishes the fact that when the demand was made, defendant declared that he would do nothing towards settling this transaction until plaintiff adjusted a preceding matter, relative to a purchase of ponies, entirely distinct and disconnected with the contract in question. This defendant had

not the right to do, and his answer was tantamount to a refusal to comply, rendering further tender or default unnecessary.   Lynch v. Postlethwaite, 7 Mart. 218; Mathews v. Wilson, 5 La. An. 692; Nashville Co. v. Ganalk, 18 L. 510; Abels v. Glover, 15 La. An. 24; Garcia v. Champonier, 8 La. 522.

Defendant calls our attention to the last clause of the contract, as we have quoted it above, contending that the stipulated three days must be presumed to have been for his benefit, and that the demand made before their expiration was premature, and could not serve as a placing *in mora*. It is true that a term is ordinarily presumed to have been stipulated in favor of the debtor.   C. C. 2053.   But it may be stipulated for the mutual advantage of both, or for the exclusive advantage of the creditor.   In the latter case, he is not compelled to avail himself of it, if his waiver can inflict no injury upon the debtor.   The clause in question we consider, if at all in the nature of a mere term, as one inserted for the benefit of Alford, the waiver whereof would be to the advantage of, instead of detrimental to, defendant.

The measure of damages, in such a case, is the difference between the price stated in the contract and the market price, at the time when delivery should have been made if fixed; or if not, at the date of putting in default.   Brown v. Duplantier, 1 Martin, N. S., 321; Steff v. Nugent, 5 Rob. 217; Fuentes v. Caballero, 1 La. An. 27; Porter v. Barrow, 3 La. An. 140; Marchesseau v. Chaffe, 4 La. Ann. 24; Fuller v. Cowell, 8 La. An. 136; Foster v. Baer, 6 La. An. 442; Foster v. Baer, 7 La. An. 613.

Defendant sought to prove that plaintiff intended to forward these mules to Kentucky, to be there disposed of, or pastured until later in the year, and contends that the latter could only recover up to the market price in Kentucky, which had not been proven.   The private intentions of plaintiff, not forming part of the contract, either by expression or implication, did not enter into it, and created no obligation on the part of the one, or rights upon the part of the other.   Alford

would have been at liberty to pursue, abandon, or modify his intention, and it would have been no concern of the defendants. We do not consider the rule stated as affected in any manner by this circumstance.

A careful examination of the merits satisfies us, as it did the judge *a quo*, that the aged mules did not come up to the standard fixed by the contract, but that, on the contrary, a number of them were in height less than 13½ hands high. The burden of proof was, in this connection, clearly upon defendant, who was bound affirmatively to show that the mules were of the stipulated character. Instead of this requirement being complied with by defendant, plaintiff has, on the contrary, established the negative, at least so far as the aged mules are concerned. We think that the evidence supports the finding of the court *a qua*, fixing the loss upon these at $10 per head, or $500 upon the lot. We are asked to accord damages at a like rate upon the other lot, but the judge *a quo* did not find this branch of the case established, plaintiff not having clearly shown the market price of such mules. The evidence upon this point leads us to the same conclusion.

Defendant finally urges that this contract was in its nature divisible, and that plaintiff should have taken such of the mules as were of the required height, and cannot recover damages upon them, citing 4 La. An. 430. This case was an action under C. C. 2520 *et seq.*, to avoid a sale, and involved the application of Art. 2540 (2518 C. C.). These provisions of the law do not govern the question of delivery or payment under contracts which are not sought to be avoided or rescinded. To such a case, C. C. articles 2108 *et seq.*, are applicable. Of these, article 2111 is as follows: "An obligation susceptible of division *must be executed between the creditor and the debtor as though it were indivisible.* The divisibility is applicable only among the heirs, who can demand of the debtor, or who are liable to pay it, only the part which they hold or for which they are liable as representing the creditor, or the debtor."

Judgment affirmed.