## No. 115.

### O. P. Alford *v.* Silviere Tiblier.

An agreement to submit to arbitration is valid and binding and enforceable but may be waived if not pleaded in *limine lites* and reserved in answer to merits.

The vendor in a contract for the sale of mules is liable in damages if the mules do not satisfy the standards set forth in the contract and the measure of damages is the difference between the contract price and the price the purchaser had to pay on the open market to obtain mules which satisfied the contractual standards and requirements.

*B. R. Forman, J. O. Nixon, Jr.,* attorneys.

*F. D. Seghers, Cotton & Levy,* attorneys.

His Honor, Judge Frank McGloin, delivered the opinion and decree of the court in the words and figures following, to wit;

Plaintiff sues for damages for violation of a contract for sale and delivery of 100 Mexican mules, in two lots of 50 each. The contract was written. The first lot of mules amongst other qualities, were to be in height, not less than 13½ hands. The others were to be colt mules, sound and in good flesh and condition, between two years past and three years of age, well shaped, and according to age of a better class than the first. The price fixed was $35.00 for the colt mules and $45.00 for the others. The damages are set at $10.00 a mule upon both lots. The contract concludes with the stipulation, binding the parties, in case of difficulty, to submit to arbitration, one

arbitrator to be selected by each, and they to select the umpire if necessary. Piblier also bound himself to keep and feed said mules for three days before their delivery, after their arrival in this city."

Defendant urges, that, the agreement to arbitrate was valid and binding, and that, without previous tender of arbitration, plaintiff could not appeal to the courts. The attempt of plaintiff to prove such tender, has not, in our opinion, been successful. It is, on the other hand, contended, that an agreement to submit to arbitration is revocable, at any time before award, citing, David vs. Maxwell, 27 Ga. 368; King vs. Howard, 27 Mo. 21; Toby vs. Driscoll, 3 Gorey 800; Marsh vs. Packer, 20 Dp. 198. To the same effect, are, McGunn vs. Hanlin, 29 Mich. 476; Goodwyn vs. Miller, 32 Ind. 419; Brown vs. Welker & Gast, 1 Colb. W. (Tenn.) 197; 40 N.J.L. (11 Broon) 288; Robertson vs. McNeil, 12 Wend. 578. These cases follow the English authorities, cited in Tobey vs. Bristol. They are however in conflict with Snodgrass vs. Gavit, 28 Pa. St. 221; Leebrick vs. Lyter, 3 Watts & Sergeant 365; McGeehan vs. Duffield, 5 Bars 495; Ennis vs. O'Connor, 3 Harris & John 163; Monongahela Navigation Co. vs. Fenton, 44 W. & S. 205; Ferry vs. Carter, 19 Kan. 135. In our courts, Driggs vs. Morgan, 2 La. Ann., the court held such a stipulation to be a contract, and in Lallande vs. Bonny, 13 La. 462, speaks of arbitration as an amicable tribunal, and intimates very strongly, that the exception in that case, presenting the very question now being discussed would have been maintained, had not the arbitrators, refused to proceed.

The English authorities, cited by Judge Dorey, in Coby vs. Bristol, follow Eynor's case 8 Co., R. 81, which latter rests upon the proposition, that a man may not render irrevocable, warrant or authority, which is in its nature countermandable, as, if a party should declare his testament to be immutable, by doing which, he could not preclude himself from revoking it. This, it seems to us, was taken at the outset for granted, the very question which was at issue. The law does not, except when the public necessity, or general good, demands it, re-

strict the liberty of contracts, and parties may, by agreement make that immutable, which the letter or plain spirit of the law, does not declare shall remain revocable. In the execution of a testament there is no mutuality, in determination and fixing of conflicting rights, or interests, and in fact nothing to place it upon the same footing as a solemn contract, executed between capable parties. The Supreme Court of the United States in Newcomb vs. Wood, 97 U. S. 583, as says Judge Storey, in Toby vs. Driscol, expressly declares that there is in such conventions, nothing contrary to the public policy.

So, in many of the authorities, declaring that such a stipulation is revocable, when the parties had executed bonds, with a penalty, to abide the action of arbitrators, it has been determined, that the bond, or penalty, may be enforced against the party receding, King vs. Joseph, 5 Caunton 452; Brown vs. Leaditt, 26 Main 256; Craftsbury vs. Hill, 28 Vt. 763. Even without such special bond, it has been held, that mutual promises to arbitrate, are sufficient consideration, one for the other, and that the party receding without justification is liable for resulting damages. Ponds vs. Harris, 113 Mass. 118.

In fact all the authorities are uniform, that once an award has been found, the right of revocation is certainly at an end.

From all of this, it clearly appears, that such contracts are not, in any manner, in contravention of the law, or of public policy. Why therefore, should parties be exempted from abiding by such stipulations any more than they would be, where their conventions cover any other lawful subject? Where lies the wisdom, or logic, of fixing a line upon one side whereof, a contract shall prevail, according to its letter, and upon the other it shall not? In fact, by what rights may courts of law, or those whose equitable intervention, like ours, is not entirely a matter of their own discretion, place beyond the pale of enforcement, contracts of this particular kind, although their subject be in no manner illegal?

Judge Storey in Toby vs. Driscol, seeks to meet these objections by declaring, that while parties, who have abided by the agreement with the award, should be held, that, until

such award, they should not be compelled, against their will, to submit their interests to the determination of a tribunal, which had not powers and facilities such as these lodged in the regular courts, for arriving at the truth and administering full justice. In the first place, the Civil Code of Louisiana, article 3115, supplies this deficiency, as do the laws of many other states of the Union. But, if they did not, there is no more reason, the consideration of consent, or agreement being eliminated, for compelling a party to abide by, and render effective, what is, or may be considered, an accomplished injustice resulting from this want of power, than to compel him to submit to himself, in the first place, to the risk thereof.

Furthermore, parties should take all those matters into due consideration, before contracting, and courts, in default of legislative intervention, in matters of strictly individual concern, are not at liberty to force their wisdom upon the citizens. When the law thus intervenes for the protection of minors, interdicts, married women, etc., it leaves others to protect and promote their own interests, as they see best.

Such an objection, however, it seems to us, is in the nature of a plea to the jurisdiction of the court, *ratione personae,* or at all events, it constitutes one of those matters which may be waived; and we are of opinion that, where, as in this case, without any reservation of the plea, the party cited appears and presents his defense, to the court before which he is sued, there is such a waiver.

Defendant next urges that he has not been placed *in mora.* It appears that plaintiff sent a representative to demand of defendant a delivery of the mules, and to tender compliance upon part of plaintiff with the contract.

We do not agree with defendant's counsel, that in such a case, the party so appearing although fully prepared and so announcing, to comply with his part is compelled in all cases to actually exhibit the money. Fuentes vs. Caballero, 1 La. Ann. 27; Bowman vs. Ware, 18 La. 599.

Furthermore, it appears that there were no other Mexican mules but those in question, accessible to defendant, with which

to comply with his contract, and if they did not meet its requirements, it was not in his power to perform. Under such circumstances default would be a vain ceremony, to the idle performance whereof, parties should not be held. Moreau vs. Chauvin, 8 Rob. 61; Marchessean vs. Chassee, 4 La. Ann. 241; Garcia vs. Champonier, 8 La. 522. Still further, the weight of the evidence established the fact, that when the demand was made, defendant declared that he would do nothing towards settling this transaction until plaintiff adjusted a preceding matter relative to a purchase of ponies, entirely distinct and disconnected with the contract in question. This defendant had not the right to do, and his answer was tantamount to a refusal to comply, rendering further, tender or default unnecessary, Lynch vs. Postlethuaite, 7 Mart. 218; Matthews vs. Wilson, 5 La. Ann. 692; Nashville Co. vs. Baualh, 18 La. 510; Abels vs. Glover, 15 La. Ann. 24; Garcia vs. Champonier, 8 La. 522.

Defendant calls our attention to the last clause of the contract, as we have quoted above, contending that the stipulated three days must be presumed to have been for his benefit, and that, the demand, made before their expiration was premature, and could not serve as placing *in mora.* It is true, that a term is ordinarily presumed to have been stipulated in favor of the debtor, Civil Code 2053. But, it may be stipulated for the mutual advantage of both, or for the exclusive advantage of the creditor. In the latter case, he is not compelled to avail himself of it, if his waiver can inflict no injury on the debtor. The clause in question we consider, if at all, in the nature of a mere term, as one unsuited for the benefit of Alford. The waiver whereof, would be to the advantage of instead of detrimental to defendant.

The measure of damages, in such cases, is the differences between the price fixed in the contract, and the market price, at the time when delivery should have been made, if fixed, or if not, at the date of putting in default.

Browns vs. Duplantier, 1 Mart. (n.s.) 321; Steff vs. Nugent, 5 Rob. 217; Fuentes vs. Caballero, 1 La. Ann. 27; Porter vs.

Barrow, 3 La. Ann. 140; Marchessean vs. Chaffe, 4 La. Ann. 24; Fuller vs. Cowell, 8 La. Ann. 136; Foster vs. Baer, 6 La. 442; Foster vs. Baer, 7 La. 613.

Defendant sought to prove that plaintiff intended to forward the mules to Kentucky, to be there disposed of, or pastured until later in the year, and contends that the latter could recover only up to the market price in Kentucky, which had not been proven. The private intentions of plaintiff, not forming part of the contract, either by expression or implication, did not enter into it, and created no obligation on the part of the one, or right on the part of the other.

Alford would have been at liberty to pursue, abandon, or modify his intentions, and it would have been no concern of defendant. We do not consider the rule stated, as affected in any matter of this circumstance.

A very careful examination of the merits satisfies us, as it did the judge *a quo*, that the aged mules did not come up to the standard fixed by the contract. That on the contrary, a number of them were, in height, less than 13½ hands high. The burden of proof was, in this connection clearly upon defendant, who was bound, affirmatively to show that the mules were of the stipulated character.

Instead of this requirement being complied with by the defendant, plaintiff, has on the contrary, established the negative, at least so far as the aged mules are concerned.

We think, that the evidence supports the finding of the court *a quo*, fixing the loss upon these at $10.00 per head, or $500.00 upon the whole lot.

We are asked to accord damages, at a like rate upon the other lot, but, the judge *a quo*, did not find this branch of the case established, plaintiff not having clearly shown the market value of such mules. The evidence, upon this point, leads to the same conclusion. Defendant finally urges, that this contract was in its nature divisable, and that plaintiff should have taken such of the mules as were of the required height, and cannot recover damages upon them. Citing 4 La. Ann. 430.

This case was, an action under Civil Code 2520 *et seq.*, to avoid a sale, and involved the application of article 2540 (2518, O. C.).

These provisions of the law, do not govern the question of delivery, or payment, under contracts, which are not sought to be avoided or rescinded. To such a case, Civil Code articles 2108 *et seq.*, are applicable, of these, article 2111, is as follows; "An obligation, susceptible of division, must be executed between the creditor and the debtor, as though it were indivisible. The divisibility is applicable only among the heirs who can demand of the debt, or who are liable to pay of it, only the part which they hold, or for which they are liable as representing the creditor, or the debtor."

Judgment affirmed.